IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 10, 2004 Session

# THE REALTY STORE, INC., ET AL v. TARL PARTNERSHIP, L.P., ET AL

**Direct Appeal from the Chancery Court for Sevier County**
**No. 02-6-293     Hon. Telford E. Forgety, Jr., Chancellor**

### No. E2003-01415-COA-R3-CV - FILED JULY 19, 2004

The Trial Court awarded plaintiffs commission for lease of real estate pursuant to Agreement between the parties.   Defendants appealed - we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

D. Scott Hurley, Knoxville, Tennessee, for Appellants.

Boyd W. Venable, III, Sevierville, Tennessee, for Appellee, The Realty Store, Inc., and Judy Jones.

## OPINION

In this action defendants dispute the amount of the commission claimed by plaintiff for the lease of real estate.

The Complaint alleged that the parties entered into a General Listing Agreement, whereby plaintiffs would attempt to lease or sell the property owned by defendants, and that the property was leased with an option to purchase which entitled plaintiffs to a commission under the terms of the Contract between the parties.

Defendant answered, stating that they "admit that a written contract and listing agreement was entered into and that the Contract is attached to the Complaint, as exhibit A. These defendants have at all times been willing and ready to pay a commission to the plaintiff, The Realty Store, Inc., in conformance with the contracts and oral agreements between the parties. These defendants admit that a commission is owed, and they have offered to pay a commission to plaintiff, however The Realty Store had demanded commission in excess of what was agreed by the parties. Specifically, the plaintiff has demanded a commission of $25,000.00, even though the price of the property had to be lowered substantially in order to lease the property."

The General Listing Agreement signed by the parties provides:

IN CONSIDERATION OF the mutual agreements contained herein, TARL Partnership, LP, (called "Seller") hires and appoints The Realty Store, Inc., (called "Broker") as exclusive agent and authorizes and grants Broker the sole, exclusive right, without reservations, for a period commencing on April 16, 2001 and expiring at midnight on October 31, 2001 to sell the following described property:

The Agreement further provides, in pertinent part:

**Term.** The expiration date of this agreement is as set forth. The carry over period is defined as 365 days after the termination of this agreement and any extension thereof. Should the Seller contract to sell or exchange, or contract to lease with option to buy, the property within the carry over period to any buyer (or anyone acting on buyer's behalf) who has been introduced to the property directly or indirectly, during the term hereof, as extended, the Seller agrees to pay the commission as set forth above. This paragraph shall not apply if the property is listed with another licensed real estate Broker at the time of such contract.

The Agreement further provides:

**Basis of Commission.** Seller (jointly and severally, if more than one) agrees to pay Broker the commission in cash at time of the closing if Seller sells, leases, exchanges or contracts to sell, lease, or exchange the Property, or any portion thereof, during the term of this agreement or any extension thereof. . . .

The General Listing Agreement was executed by the parties on April 16, 2001, and on the 23rd of April 2001, the parties entered into an addendum to the Agreement, which provides that if the property is leased the commission will be $25,000.00 per year. The addendum also provided:

Excluded Parties: A list of persons/parties currently working with owners to purchase the property is excluded from this contract and no commission would be earned or due should the property sell to any of these persons/parties

The list of excluded parties was attached as Addendum B. The names of Howard Auman and Auman Productions, LLC, who leased the property, were not included on the Addendum B "Exclusion List".

Plaintiff filed a Motion for Summary Judgment, and attached the affidavit of Judy Jones, a broker for The Realty Store, who states plaintiffs were owed a commission under the terms of the listing agreement, due to Auman Productions, LLC entering into an agreement with Tarl Partnership, LP for the lease and purchase of the subject property by a Lease/Purchase Agreement dated November 7, 2001.

In response to the Motion, defendant said:

The Defendants have indicated in their Answer their willingness to pay the Plaintiff's commission, but deny that the Plaintiff is entitled to the commission sued for.

The Defendants would show the Court that the listing agreement makes no provision for the amount of the commission in the event that the property was leased for an amount other than originally contemplated in the listing agreement.

Defendants filed the affidavit of Howard Frank Auman, Jr., which states that Auman Productions, LLC leased the property in dispute on November 7, 2001, and that he first inquired about leasing or purchasing the property 18 months prior to entering into the lease, and that first contact was made with Teddy Phillips, general partner of defendant partnership, and that his negotiations were with Teddy Phillips. Further, that he did not learn of any involvement of plaintiffs with the property until the summer of 2001, when about July 2001, he asked Phillips for access to the interior of the theater, and arrangements were made for access, and Judy Jones met him at the theater and gave him access to the interior of the building. He further stated he did not conduct negotiations through defendants.

Defendant Phillips filed an affidavit to the effect that he was a general partner of the partnership and that he was contacted by Frank Auman in the summer of 2000 about the possibility of purchasing or leasing the property, and that in discussions with Judy Jones of The Realty Store, Inc., about listing the property for sale through that agency, that he informed Jones that he was licensed to sell real estate in the State of Tennessee and had been in discussions with numerous parties about the possibility of a lease or sale, and that Jones agreed that if the purchaser or lessee of the theater was obtained through my contacts, that the commission would be reduced as if any other real estate broker had produced the contact leading up to the sale of the theater. He further said "The listing contract that was ultimately executed contained a co-broker commission provision in the addendum to the listing agreement. However, Judy Jones told me that if I produced the purchaser/lessee of the theater, and the purchase of the sale occurred during the term of her commission or any extension thereof, that the commission charge for The Realty Store would be only one half of that amount provided by the listing agreement".

-3-

The Chancellor granted plaintiff's Motion for Summary Judgment, holding that they were entitled to the full commission set forth in the Contract. Defendants have appealed.

Summary Judgments are reviewed on appeal as questions of law, with no presumption of correctness of the Trial Court's findings. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997). Defendant's first issue posits that because the final deal struck with Auman Productions, LLC was substantially less than the offering price stated in the Listing Agreement, the broker's commission must be somehow adjusted accordingly. There is no provision in the plain language of the listing agreement and no authority cited that would permit such a result. Defendants admit the Contract states a flat $25,000.00 per year commission if a lease is executed, but argue that it was not the parties' intent that a flat rate which results in a disproportionately large fee as a percentage of any deal, that is less than the offering terms in the listing agreement. It is insisted that the percentage commission's terms applicable to the sale of the property demonstrate that the commission on such a lease should also be a percentage.

The commission term for a lease is completely straightforward and unambiguous. There is no possible way to construe the phrase "$25,000.00 per year" other than what it states. Defendants cannot create an ambiguity where none exists by resorting to strained constructions. *Hillsboro Plaza Enters. v. Moon,* 860 S.W.2d 45, 47-48 (Tenn. Ct. App. 1993). When the document is susceptible of only one reasonable interpretation, the Court is compelled "to give effect to the intention expressed by the language used, whatever may be thought about the harshness of the result." *E.O. Bailey & Co., Inc. v. Union Planters Title Guaranty Co.,* 232 S.W.2d 309. 314 (Tenn. Ct. App. 1949).[1]

Defendants conceded that they owe plaintiff some commission, but that the amount in the Contract is unwarranted. Under the Contract, there is no basis for the court to order a commission paid on a quantum merit basis. *Pacesetter Properties, Inc., v. Hardaway*, 635 S.W.2d 382, 391 (Tenn. Ct. App. 1981).

Defendants also contend that Auman Productions, LLC was omitted from the Exclusion list, but that the term "full and comprehensive list" on the Addendum was not intended to be "a detailed listing of each and every individual and company" or "an exhaustive list." Under the provision of the Addendum, defendants are excused from paying a commission only of those appearing on the list. Any other construction would render the list meaningless.

Defendants argue that there was an oral collateral agreement with plaintiff that the commission would be one-half if defendant produced a buyer during the contract term. The parol evidence rule does not exclude oral testimony if the parties have an underlying agreement or

---

[1]The listing agreement offered this property for sale at 5.5 million, or a lease at $357,000.00 per year, with an option to purchase during the lease period. The property was leased at $250,000.00 per year with an option to purchase for five million. There was an option to renew the lease for a second year at $27,500.00 monthly, and an option to renew a third year for $30,000.00 monthly.

collateral contract, but "[p]arol proof of 'inducing representations' or 'collateral agreements' to the written contract must be limited to subject matter which does not contradict or very terms which are plainly expressed in the writing." *Malone v. Probasco*, 2004 WL 40530 (Tenn. Ct. App. 2004), *citing Whelchel Co., Inc., v. Riply Tractor Co., Inc.,* 900 S.W.2d 692 (Tenn. Ct. App. 1995).

The test for an admissible collateral agreement is "whether the oral agreement considering the parties circumstances, the subject matter of the agreement, and the nature of the writing, would ordinarily have been included in a written agreement." *In re Media Cent. Inc.,* 190 B.R. 316, 321 (E.D. Tenn. 1994).

Defendants' Statement of Additional Facts and supporting Affidavit filed in response to the motion states that prior to or contemporaneously with executing the contract, Jones agreed to one-half the stated commission if appellant produced the ultimate buyer. There is no language in the contract to support such agreement, and it directly contradicts the Listing Agreement. The rights and obligations of the parties are governed by the terms of the written contract. *Hillsboro Plaza Enters,* at 47, not by the parties' statements during their negotiations or drafts of the final contract. *Faithful v. Gardner*, 799 S.W.2d 232, 235 (Tenn. Ct. App. 1990). *Also see, GRW Enters, Inc.,* 610 n. 2. This issue is without merit.

Defendants argue in their Reply Brief that W.T. Phillips, its representative was a co-broker and acting as a "Facilitator/Transaction Broker". The Contract states that the plaintiff is authorized to negotiate a division of commissions with such brokers. Based on this clause, defendants insist they are entitled to a reduction in the commission because appellant's representative is a licensed real estate broker himself. The Facilitator/Transaction Broker represents the interest of neither seller nor buyer. Tenn. Code Ann. § 62-13-102 defines "Facilitator" and "Transaction Broker".[2] Defendant does not meet the statutory definition because he was not acting

---

[2](9) "Facilitator" means any licensee:

(A) Who assists one (1) or more parties to a transaction who has not entered into a specific written agency agreement representing one (1) or more of the parties; or

(B) Whose specific written agency agreement provides that if the licensee or someone associated with the licensee also represents another party to the same transaction, such licensee shall be deemed to be a facilitator and not a dual agent; provided, that notice of assumption of facilitator status is provided to the buyer and seller immediately upon such assumption of facilitator status, to be confirmed in writing prior to execution of the contract. A facilitator may advise either or both of the parties to a transaction but cannot be considered a representative or advocate of either party. "Transaction broker" may be used synonymously with, or in lieu of, "facilitator" as used in any disclosures, forms or agreements under this chapter;

T. C. A. § 62-13-102

as a neutral, but as a party advancing his own interest. Pursuant to Tenn. Code Ann. § 62-13-401, a broker cannot be a facilitator, once a written agency agreement is involved.[3] The issue is without merit.

Finally, defendants argue that the broker's involvement and efforts do not fall within the provisions of the carry over clause, and therefore are not entitled to a commission. This position is contra to the answer and position taken below. However, the Chancellor found that plaintiff's actions complied with the conditions set forth in the Carry Over Agreement. The carry over clause provides that should the seller "contract to sell . . . the property within the carry over period to any buyer . . . who has been introduced to the property directly or indirectly . . . the seller agrees to pay the commission." The record establishes that plaintiff broker met with Auman at the property in July of 2001 and gave him "access to the interior of the building". The record demonstrates that Auman's "introduction to the property" occurred through the actions of the broker. Plaintiff's position is bolstered by the phrase "directly or indirectly", which modifies the concept of introduction to the property. Moreover, the carry over clause does not state by whom the buyer is to be introduced to the property. We conclude this issue is without merit.

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Tarl Partnership, L.P., and W.T. Phillips, Jr.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[3]Tenn. Code Ann. § 62-13-401: Until such time as a licensee enters into a specific written agreement to establish an agency relationship with one (1) or more parties to a transaction, such licensee shall be considered a facilitator and shall not be considered an agent or advocate of any party to the transaction.